John REZZONICO and Jacquelyn Rezzonico, Defendant–Plaintiff–Counterclaim–Defendant–Appellant,

v.

H & R BLOCK, INC. and H & R Block Eastern Tax Services, Inc., Defendant–Counterclaim–Plaintiff–Appellee,

HRB Royalty, Inc., Add as party from consolidated case, Plaintiff.

Docket No. 98–7060.

United States Court of Appeals, Second Circuit.

Argued Nov. 6, 1998.

Decided June 29, 1999.

**146**

Norman A. Olch, New York, New York, for Appellants.

Peter J. Klarfeld, Wiley, Rein & Fielding, Washington, D.C., for Appellees.

Before: KEARSE, CARDAMONE, and POOLER, Circuit Judges.

CARDAMONE, Circuit Judge:

We must decide two preliminary questions that will determine whether we reach the merits of this appeal: first, whether we may properly reconsider a decision of a motions panel denying defendant's motion to dismiss the appeal for lack of appellate jurisdiction; second, whether upon reconsidering the subject of our jurisdiction we must dismiss this appeal as untimely. We answer both of these questions in the affirmative. Also before us is whether "unique circumstances" exist that will excuse an otherwise untimely appeal. We answer this question in the negative because we are not persuaded that the elements of the "unique circumstances" test are met; that is, specific assurances, with respect to an act effectively postponing the filing deadline for taking an appeal, were not given by a judicial officer. Hence, while the merits of the appeal present an engaging question of contract interpretation in the face of new computer technology, we do not reach that issue.

Plaintiffs John and Jacquelyn Rezzonico (plaintiffs or appellants) appeal from a judgment entered November 26, 1997 in the United States District Court for the District of Vermont (Murtha, C.J.), granting H & R Block, Inc., H & R Block Eastern Tax Services, Inc., and HRB Royalty, Inc.'s (collectively, Block or defendant) motion for summary judgment. On March 24, 1998 a motions panel of this Court denied Block's motion to dismiss the

appeal as untimely. Subsequently, the present merits panel heard the appeal. We conclude that because plaintiffs did not file their appeal in a timely fashion we lack jurisdiction to hear it. It must therefore be dismissed.

## BACKGROUND

Plaintiffs had franchise contracts with Block to operate three H & R Block tax return preparation offices, one in New Hampshire and two in Vermont. In January 1994 defendant terminated those agreements for alleged underpayment of royalties and other breaches of contract. The following month, plaintiffs responded by filing suit against defendant in state court, asserting claims for breach of contract and bad faith, and seeking declaratory relief under the terms of their franchise agreements. Block removed the action to the United States District Court for the District of Vermont and asserted counterclaims for fraud and breach of contract and sought declaratory relief. In a separate action, HRB Royalty, Inc., the owner of the H & R Block service mark, sued the Rezzonicos for service mark infringement and unfair competition. HRB Royalty's action was consolidated with the action filed by the Rezzonicos. The underlying dispute in the consolidated actions involved, *inter alia*, whether the terms "preparation of income tax returns" and "related services," upon which plaintiffs were required to pay royalties to defendant, included the electronic filing of tax returns, a system of filing made possible by new technology that was introduced after the parties entered into the subject franchise agreements.

In March 1996 Block moved for summary judgment with respect to all claims and counterclaims asserted in the consolidated actions. A year later the district court by order dated March 21, 1997 adopted the report and recommendation of a magistrate judge and granted defendants' motion. In May 1997 it held an evidentiary hearing to determine the ap-

propriate relief, and on November 20, 1997 issued an order for entry of final judgment, awarding defendants' monetary, injunctive and declaratory relief, and dismissing all of plaintiffs' claims with prejudice. The memorandum and order provided, in part

> Upon review, the Court finds Block is entitled to an additional award of $237,-324. Under the contracts at issue, the Rezzonicos *are not entitled* to take advantage of the discount royalty rate otherwise afforded franchisees who are not in breach of their franchise agreement. (emphasis added)

On November 26, 1997 judgment was entered, mistakenly omitting the word "not" from the emphasized portion, and copies were served on the parties. Along with the judgment the parties were sent, pursuant to Fed.R.Civ.P. 77(d), a form signed by a deputy clerk, entitled "Notice to Litigants," which stated that "the Judgment or Order" had been filed and entered on the docket on November 26, 1997 and that a notice of appeal must be filed on or before December 29, 1997.

On December 1, 1997 the clerk of the district court entered an amended judgment, adding the mistakenly omitted word "not" to the referenced sentence. The docket entry relating to the amended judgment states that the purpose of the amendment was "to correct [a] clerical error." Copies of the amended judgment were sent to the parties with another Rule 77(d) "Notice to Litigants," this time stating that the judgment was filed and entered on December 1, 1997 and that a notice of appeal must be filed on or before December 30, 1997.

On December 15, 1997 appellants filed with the district court a "Motion for Reconsideration" and a "Motion for New Trial" pursuant to Fed.R.Civ.P. 59. Both motions were denied by orders entered on December 17, 1997. In denying the motion for reconsideration, the trial court stated that "[b]ecause plaintiffs primarily

seek reconsideration of issues determined months ago on summary judgment, the motion to reconsider is DENIED as untimely." The district court endorsed the motion for a new trial "DENIED."

On January 13, 1998 plaintiffs filed a notice of appeal. Defendant then filed a motion seeking to dismiss the appeal for lack of appellate jurisdiction. A motions panel of this Court denied the motion to dismiss on March 24, 1998.

## DISCUSSION

### I Decision of Motions Panel

■ Appellants aver in their brief that application of the law of the case doctrine bars us from reconsidering the question of appellate jurisdiction because it was previously considered and decided by the motions panel, which denied Block's motion to dismiss the appeal. Law of the case and *res judicata* are closely related legal concepts both resting on policy considerations favoring putting an end to litigation, saving judicial time, and bringing certainty to legal relations. *See Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948). Since we deal on this appeal with the former legal concept, it is helpful to distinguish the latter.

■ After a final judgment on the merits rendered by a court of competent jurisdiction, *res judicata* bars subsequent litigation between the same parties and those in privity with them involving the same cause of action. *See Anaconda–Ericsson Inc. v. Hessen (In re Teltronics Servs., Inc.)*, 762 F.2d 185, 190 (2d Cir. 1985). If subsequent litigation arises from the same cause of action, both those matters actually offered to sustain the claim and those that might have been offered in the prior action are barred from being relitigated; that is, there is claim preclusion. *See id.*

■ If subsequent litigation arises from a different cause of action, the prior judgment bars only those matters or issues common to both actions that were expressly or by necessary implication adjudicated in the prior litigation. This prong of *res judicata* is referred to as issue preclusion. The Supreme Court has stated that issue preclusion means that when an issue has been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. *See Schiro v. Farley*, 510 U.S. 222, 232, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994).

■ The doctrine of law of the case is similar to the issue preclusion prong of *res judicata* in that it limits relitigation of an issue once it has been decided. However, law of the case is concerned with the extent to which law applied in a decision at one stage of litigation becomes the governing principle in later stages of the same litigation. *Res judicata* does not speak to direct attacks in the same case, but rather has application in subsequent actions.

■ Questions regarding application of law of the case arise when a party directly attacks a decision by attempting to have it corrected, annulled, reversed, vacated or declared void by the court that made it. "As most commonly defined, the doctrine [of law of the case] posits that when a court decides upon a rule of law, that decision should [generally] continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983); *see also* 18 Charles A. Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4478, at 788–89 (1981). Application of the law of the case doctrine varies depending upon the context. Although rulings of the district court are subject to revision by that court "at any time before the entry of final judgment," Fed.R.Civ.P. 54(b); *accord Cullen v. Margiotta*, 811 F.2d 698, 708 (2d Cir.1987), *overruled on other grounds Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), under law of the case a trial court cannot recon-

sider on remand an issue decided by an appellate court, *see Insurance Group Comm. v. Denver & Rio Grande W. R.R.*, 329 U.S. 607, 612, 67 S.Ct. 583, 91 L.Ed. 547 (1947).

 In contrast, the law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings, even when the ruling constituted a final decision in a previous appeal. *See, e.g., Soto–Lopez v. New York City Civil Serv. Comm'n*, 840 F.2d 162, 168 (2d Cir.1988); *United States v. Fernandez*, 506 F.2d 1200, 1203 (2d Cir.1974) ("An issue decided on a prior appeal is not foreclosed with all the finality of *res judicata* when the case comes back to this court."). While informing the court's discretion, law of the case "does not limit the tribunal's power." *Arizona*, 460 U.S. at 618, 103 S.Ct. 1382. However, we do not revisit such a final decision "absent 'cogent' or 'compelling' reasons," *Doe v. New York City Dep't of Social Servs.*, 709 F.2d 782, 789 (2d Cir.1983).

Because law of the case doesn't bind an appellate court even as to final orders, it follows that the doctrine is even less binding in the context of interlocutory orders. We have previously held when considering an appellate court's grant of leave to appeal under 28 U.S.C. § 1292(b) that a motions panel's grant of such leave "is provisional since the merits panel that hears the certified appeal is free to review that subject again." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir.1996). The principle that some issues decided by a motions panel are only provisional or interlocutory permits us to reconsider the timeliness of the appeal at issue here.

Several reasons persuade us of the soundness of this conclusion. First, as discussed above, the law of the case doctrine is discretionary, not mandatory. The doctrine expresses, in shorthand fashion, a practice of courts generally not to reconsider that which has already been decided. But it does not purport to be a legally binding limitation on the court's authority to reconsider such matters. Second, a motions panel's decision is based on an abbreviated record and made without the benefit of full briefing by the parties, which may result in a less than thorough exploration of the issues. *See Stifel, Nicolaus & Co. v. Woolsey & Co.*, 81 F.3d 1540, 1544 (10th Cir.1996). Third, reexamination of a question regarding our jurisdiction is especially important whenever there is reason to believe that it may be lacking. *See* Fed. R.Civ.P. 12(h)(3); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 107–08 (2d Cir. 1997); *United States v. Houser*, 804 F.2d 565, 568 (9th Cir.1986).

Moreover, in ruling that we may revisit the motions panel's decision on jurisdiction, we join nearly every other Circuit that has considered this question. *See, e.g., CNF Constructors, Inc. v. Donohoe Constr. Co.*, 57 F.3d 395, 397–98 n. 1 (4th Cir.1995); *EEOC v. Neches Butane Prods. Co.*, 704 F.2d 144, 147 (5th Cir.1983); *American Fed'n of Grain Millers, Local 24 v. Cargill Inc.*, 15 F.3d 726, 727 (7th Cir.1994); *McCuen v. American Cas. Co.*, 946 F.2d 1401, 1403 (8th Cir.1991); *Houser*, 804 F.2d at 568 (9th Cir.); *Stifel, Nicolaus & Co.*, 81 F.3d at 1544 (10th Cir.). *But see Taylor v. FDIC*, 132 F.3d 753, 761 (D.C.Cir.1997) (motions panel's denial of motion for dismissal is law of the case and "binding"). We therefore proceed to examine the timeliness of the instant appeal.

## II Timeliness of Appeal

Block asserts that we lack jurisdiction because the notice of appeal was untimely and no unique circumstances permitting an untimely appeal are present. Appellants contend that their appeal was timely because the time to appeal ran from the date of entry of a modified judgment, or that, in any event, their lateness was excusable in light of information they received from the district court clerk's office. They maintain that we thus have jurisdiction over the appeal and should decide the case on its merits.

## A. *General Rule*

We turn first to the Federal Rules of Appellate Procedure. Those rules provide that a notice of appeal in a civil case to which the United States is not a party must be filed within 30 days of entry of the judgment from which the appeal is taken. *See* Fed. R.App. P. 4(a)(1). Rule 4(a), which sets out the 30–day time limit within which this appeal had to have been taken, serves the salutary purpose of fixing the point at which litigation shall end—if an appeal has not been taken before that date—thereby relieving prospective appellees of the demands appellant is making against them. The Rule 4(a) time limit is mandatory, and when an appeal is taken beyond the time set out in the Rule, an appellate court is without jurisdiction to entertain and decide it. Thus, the limit is said to be "mandatory and jurisdictional." *Browder v. Director, Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978).

The time period for filing a notice of appeal can be extended only in certain narrow circumstances, including the timely filing of one of the tolling motions specified under Fed. R.App. P. 4(a)(4), which encompasses motions under Fed.R.Civ.P. 59 to amend the judgment or for a new trial. Fed. R.App. P. 4(a)(4)(iii)-(iv). Upon denial of one of these motions, the 30–day period starts anew. But, to receive the benefit of this tolling effect, the appealing party must file the amending motion within ten days of the entry of the underlying judgment. *See* Fed. R. Civ. P 6(b), 59(b); Fed. R.App. P. 4(a)(4).

Having discussed the Rules, we pass next to their application in the case at hand. The original judgment was entered on November 26, 1997 and appellants thereafter filed two motions: a motion for a new trial and a motion to reconsider. Both motions were filed on December 15, 1997, more than ten days after the entry of judgment. Consequently, the motions had no tolling effect. The Rezzonicos' notice of appeal was filed on January 13, 1998, more than 30 days from entry of the original judgment. Hence, when measured from the date of the original judgment, their appeal is untimely.

Appellants maintain that we must measure their time to appeal and to file tolling motions from the date of the amended judgment entered December 1, and not from the November 26 date of the original judgment. Specifically, they assert that since the amended judgment added the word "not," it "effected a material change in the judgment" and restarted their time for filing the notice of appeal and for filing any tolling motions. Block declares that the amended judgment simply corrected a clerical error, and thus did not restart the time to take an appeal.

The long established rule states that "[o]nly when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken ... begin to run anew. The test is a practical one." *FTC v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211–12, 73 S.Ct. 245, 97 L.Ed. 245 (1952). The parties had contested whether the Rezzonicos were entitled to a discounted royalty rate provided in the franchise agreement, and the inclusion of the word "not" in the amended judgment, the Rezzonicos contend, effected a material change with respect to that issue.

In determining what constitutes a clerical error, our analysis is informed by the corrections permitted under Fed.R.Civ.P. 60(a), which provides

> [c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

In deciding whether Rule 60(a) applies, courts distinguish "between changes that implement the result intended by the court at the time the order was entered and

changes that alter the original meaning to correct a legal or factual error," because Rule 60(a) allows for the former, but not the latter. *Kokomo Tube Co. v. Dayton Equip. Servs. Co.*, 123 F.3d 616, 623 (7th Cir.1997). Thus, courts often examine in detail the text of the district court's prior pronouncement. *See id.* at 623–24 (judgment substituting another party for party in favor of whom the district court order granted judgment ruled a clerical error because district court's intent was clear from order).

Here, the omission of the word "not" from the original judgment was a clerical mistake. The district court's ruling and intention are clear from its memorandum and order. Block was seeking damages of $237,324 as "additional royalty due on the Rezzonicos' gross receipts" and that amount was the difference between the 40 percent royalty rate claimed by Block and the 30 percent royalty rate the Rezzonicos had already paid. The district court's $237,324 award reflected the 10 percent difference in the disputed royalty rates, resulting from its finding that plaintiffs were *not* permitted to take advantage of the 30 percent discount royalty rate. Moreover, the omission of the word "not" from the judgment did not substantively affect the Rezzonicos' liability; in fact, even the original judgment required appellants to pay defendant $237,324.

The omission considered by itself concededly changed the meaning of the sentence, but the district court's memorandum and order, as well as the preceding sentence in the judgment, clarifies that appellants were not permitted to take advantage of the discounted rate. For these reasons, the filing of the amended judgment did not restart the Rezzonicos' time to appeal or to file tolling motions.

### B. *"Unique Circumstances" Doctrine*

Finally, invoking the "unique circumstances" doctrine first enunciated by the Supreme Court in *Thompson v. INS*, 375 U.S. 384, 387, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (*per curiam*), the Rezzonicos maintain that even if their notice of appeal was untimely we may still hear the appeal. The unique circumstances doctrine applies "only where a party has performed an act which, if properly done, would postpone the deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 179, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989). Appellants maintain that these criteria are met and that this doctrine excuses the untimeliness of their appeal.

The Rezzonicos contend they received a series of assurances from the district court that their time to appeal would be measured from December 1, the date the amended judgment was entered. They insist they were misled by the district court because when that court denied the motion to reconsider as untimely and denied the motion for a new trial without explanation, plaintiffs assumed that the motion to reconsider was timely and had been denied on another ground. Plaintiffs also declare they were misled by the district court clerk's office because the Rule 77(d) notice, which stated that the notice of appeal needed to be filed by December 30, led them to believe their time for filing an appeal and motions was restarted; and, also because on December 17, 1997 a deputy clerk read the orders and docket entries over the telephone to an associate of the law firm representing plaintiffs and assured her that the trial judge deemed the Rule 59 motion timely. The associate stated in an affidavit that if both motions had been denied as untimely, she would have filed the notice of appeal within 30 days of the November 26 judgment.

Yet, in our view, this case fails to present the kind of unique circumstances necessary to excuse the untimely filing of appellants' notice of appeal. The failure to receive a Rule 77(d) notice does not affect a party's time to appeal or permit a court to relieve a party of its failure to timely

appeal. *See Bortugno v. Metro–North Commuter R.R.*, 905 F.2d 674, 676 (2d Cir.1990); *see also* Fed.R.Civ.P. 77(d). Further, we have never held that a party may rely on the Rule 77(d) notice it receives to restart its time to appeal, and we decline to do so here. Similarly, appellants could not rely on the assumption they drew based on their readings of "denied" versus "denied as untimely," the wording used by the district court to decide two motions filed on the same day. The word "denied" implies nothing regarding the timeliness of the motion for a new trial, and appellants are not free to interpret it in their favor.

 With regard to the oral communication with the clerk's office, such statements by a member of the clerk's office staff are not official judicial assurances that qualify as unique circumstances. "Judicial officer" means a judge or a member of a judge's staff empowered to speak in the judge's behalf. *See, e.g., Moore v. South Carolina Labor Bd.*, 100 F.3d 162, 164 (D.C.Cir.1996) (statements by clerk's office staff may constitute "specific assurances," but are not "official judicial action"); *United States v. Heller*, 957 F.2d 26, 29 (1st Cir.1992) (rejecting claim of unique circumstances on the basis that "'judicial officer' in this context ... mean[s] a judge, not an employee in the office of the clerk"); *Sonicraft, Inc. v. NLRB*, 814 F.2d 385, 387 (7th Cir.1987) (no unique circumstances where clerk's office employee mistakenly told counsel that petition mailed, rather than received, in 30 days would be timely).

Although it may appear at first blush that the Tenth and Eleventh Circuits have applied the unique circumstances doctrine to allow appeals to proceed in similar situations, those cases are distinguishable because the assurances received from the clerk's offices related to truly clerical matters falling within the direct responsibility of those offices. *See Woods v. Wal–Mart*, 124 F.3d 219, 1997 WL 527668, at *2 (10th Cir.1997) (unpublished) (statement by clerk's office personnel regarding whether a particular judgment had been entered); *Willis v. Newsome*, 747 F.2d 605, 606 (11th Cir.1984) (assurances about clerk's office's "local custom" and practice for stamping notices of appeal).

Here, the assurances appellants maintain they received deal not with clerical matters, but with the substance of the order itself and the basis for the district court's decision on the motion for a new trial. The clerk's office of course might not accurately interpret a judge's order, and parties should not rely on such sources to construe an order. As a consequence, appellants fail to satisfy the requirements to establish unique circumstances to excuse their untimely filing of this appeal.

## CONCLUSION

For the foregoing reasons, this appeal is dismissed as untimely.