05-1706-cv
Ollman v. Special Bd. of Adjustment No. 1063

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: April 3, 2008                                    Decided: June 3, 2008)

Docket No. 05-1706-cv

_____

LAIGTH A. OLLMAN,

*Plaintiff-Appellant*,

− v. −

SPECIAL BOARD OF ADJUSTMENT NO. 1063, BROTHERHOOD OF LOCOMOTIVE
ENGINEERS, NORFOLK SOUTHERN RAILWAY COMPANY,

*Defendants-Appellees.*

_____

Before: LEVAL, CALABRESI, and WESLEY, *Circuit Judges.*

_____

Appeal from an Order of the United States District Court for the Western District of New York (Siragusa, *J.*) granting summary judgment to Defendants-Appellees and dismissing Plaintiff-Appellant's claims for violation of the Railway Labor Act ("RLA"). We hold that where an employee has authorized his union to represent him before a special board of adjustment, and has not withdrawn that authority, either explicitly or implicitly, the "due notice" requirement of the RLA is satisfied when the board provides notice to the union. We further hold that a special adjustment board is not a proper party to a proceeding seeking review of its award, nor is a union unless the plaintiff has a "hybrid" claim against the union for breach of its duty of fair representation. Accordingly, the grant of summary judgment is AFFIRMED. We decline to revisit the plaintiff's duty of fair representation claim, the dismissal of which a motions panel of our Court has already affirmed.

_____

LEE G. DUNST, Gibson, Dunn & Crutcher LLP (Joshua Wilkenfeld, *on the brief*), New York, N.Y., *for Plaintiff-Appellant*.

WILLIAM KANTER, Appellate Staff, Civil Division, U.S. Department of Justice (Peter D. Keisler, Terrance P. Flynn, Tara Leigh Grove, *on the brief*), Washington, D.C., *for Defendant-Appellee Special Board of Adjustment No. 1063*.

HAROLD A. ROSS, North Olmsted, Ohio, *for Defendant-Appellee Brotherhood of Locomotive Engineers*.

JAMES S. WHITEHEAD, Sidley Austin LLP, Chicago, Ill., *for Defendant-Appellee Norfolk Southern Railway Company*.

_____

CALABRESI, *Circuit Judge*:

This case arose after Plaintiff-Appellant Laigth Ollman ("Ollman"), a former employee of Norfolk Southern Railway Company ("NSRC"), was charged (a) with conducting himself in an "unbecoming" manner while off duty and (b) with taking unjustified sick leave. After an investigation, NSRC dismissed him from his job, and Special Board of Adjustment No. 1063 (the "Board") upheld that dismissal. His union, the Brotherhood of Locomotive Engineers ("BLE"), represented him in his disciplinary proceedings before NSRC, appealed his case to the Board, and presented his unsuccessful appeal at the ensuing Board hearing. Subsequently, Ollman, acting *pro se*, began this action in the United States District Court for the Western District of New York, alleging, *inter alia*: (1) that the Board, NSRC, and BLE (collectively, "Appellees") violated the Railway Labor Act (the "RLA"), 45 U.S.C. § 151 *et seq.*, because they failed to give him notice of the Board proceedings, and (2) that BLE violated its duty of fair representation. The District Court (Siragusa, *J.*) dismissed Ollman's claims on summary judgment, and Ollman, *pro se*, filed a timely appeal.

A motions panel of our Court affirmed the District Court's dismissal of some of Ollman's claims and appointed counsel to brief the others. *See Ollman v. Special Bd. of Adjustment No. 1063*, No. 05-1706-cv (2d Cir. May 22, 2006) (unpublished order). Now, through counsel, Ollman asks us to reverse the District Court's grant of summary judgment to Appellees, to reinstate his duty of fair representation claim, and to remand this case to the District Court. For the reasons set forth below, we affirm the District Court's decision.

**I.     BACKGROUND**

On January 4, 2000, NSRC sent a letter to Ollman, a locomotive engineer in its employ. The letter alleged that Ollman had engaged in off-duty conduct "unbecoming" an NSRC employee and that he had taken unjustified sick leave. Pursuant to the procedures established in the collective bargaining agreement between NSRC and BLE, NSRC summoned Ollman to an investigative hearing.

A.     *The Proceedings "on the Property" and before the Board*

The formal investigation, which consisted of testimony by several witnesses and a statement on Ollman's behalf, took place on February 15, 2000. According to the transcript of the hearing, Ollman attended, and two BLE local chairmen, Robert H. Linsey and M.R. Price, acted as his representatives. Ollman was asked at the hearing whether he "desire[d] representation to assist [him]," and he replied, "From Bob Linsey and Mike Price."

On February 25, 2000, NSRC dismissed Ollman. NSRC denied Ollman's subsequent appeal. Then BLE, as provided for by the RLA, *see* 45 U.S.C. § 153 First (i), petitioned the local special board of adjustment to review Ollman's dismissal. The record does not establish whether BLE advised Ollman that it had taken this action on his behalf. BLE recovered a letter from its

archives, dated June 14, 2000 and addressed from BLE Vice General Chairman Larry W. Sykes to Ollman, stating the date, time, and location of the hearing before the Board (the "Sykes letter"). Ollman denies ever receiving such a letter and raises questions as to its genuineness and admissibility.

On July 26, 2000, the Board convened to review Ollman's appeal. Ollman denies attending the hearing, and there is no record of his presence. BLE representatives prepared a submission on his behalf and argued his case. On October 17, 2000, the Board determined that, because NSRC had carried its burden of proof, Ollman was not entitled to relief.

On December 4, 2000, BLE sent Ollman a certified letter advising him of the Board's decision. The letter further stated that Ollman could seek judicial review of the proceedings but that none of the "limited circumstances" under which review was possible appeared to be present in his case. "Progression of any such appeal . . . would be your responsibility," the letter continued, and such an appeal would have to be filed in United States District Court "within two years of the date this award was rendered (October 17, 2000) . . . ." Ollman does not deny that he received this correspondence.

B.    *The District Court Proceedings*

Acting *pro se*, Ollman filed a Verified Petition in the United States District Court for the Western District of New York on May 27, 2002. And on January 9, 2003, pursuant to the District Court's direction, Ollman filed an amended complaint. The complaint alleged that the Board, NSRC, and BLE had failed to provide him with notice of the Board proceeding, and that such notice was required by the provision of the RLA, which directs that the board give "due

notice of all hearings to the employee." 45 U.S.C. § 153 First (j). It also alleged that BLE violated its duty of fair representation.[1]

Appellees filed motions to dismiss the amended complaint. The Board argued that, as an impartial adjudicatory tribunal, it was immune from suit. BLE claimed that it, also, was an improper party to the suit, and that Ollman's fair representation claim was barred by the applicable statue of limitations. BLE and NSRC also argued, relying on materials attached to BLE's motion, that Ollman had received whatever notice the RLA requires. These materials included a declaration by Linsey, a transcript of the February 15, 2000 proceeding, and a copy of the Sykes letter advising Ollman of the date, time, and place of the Board hearing.

By order dated January 15, 2004, the District Court converted Appellees' motions into motions for summary judgment, in light of the outside materials they incorporated. The Court also noted that the date on which Ollman was to have filed his response had passed. Accordingly, it ordered Ollman to file and serve his response by February 20, 2004. And because Ollman was acting *pro se*, it ordered the Clerk of Court to send Ollman both a copy of the Court's order and an *Irby* warning,[2] *see Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001) (warning that we will "vacate summary judgment dismissals against a *pro se* litigant

---

[1] In the amended complaint, Ollman also alleged that NSRC failed to hold a disciplinary hearing within the contractual limits of the collective bargaining agreement, that NSRC violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and that NSRC and BLE conspired to violate his constitutional right to due process. These claims are no longer before us. *See Ollman v. Special Bd. of Adjustment No. 1063*, No. 05-1706-cv (2d Cir. May 22, 2006) (unpublished order).

[2] The *Irby* warning (titled "Important Notice to Pro Se Litigants") informed Ollman that to survive Appellees' motions for summary judgment, he "MUST submit opposing papers in the form of one or more affidavits (or affirmations) made upon the personal knowledge of the person signing each affidavit," and that "[e]ach affidavit must set forth admissible facts and must show that the person submitting that affidavit is competent to testify as to the matters stated therein . . . ."

when the *pro se* is unaware of the consequences of failing to adequately respond to the motion for summary judgment").

On March 26, 2004,[3] Ollman filed a memorandum of law in opposition to the motions to dismiss, in which he claimed that he had never received the Sykes letter, nor had anyone at his home address, and that "BLE had no permission either implied or direct to peruse [sic] any claim" on his behalf. Ollman filed no documentary exhibits and no affidavits or other sworn statements.

On March 14, 2005, the District Court granted Appellees' motions for summary judgment and dismissed the case.

The District Court first addressed, and accepted, the Board's argument that it should not have been made a party to Ollman's petition for review of its award. Based on our decision in *H.G. Skidmore v. Consolidated Rail Corp.*, 619 F.2d 157, 159 (2d Cir. 1979), *cert. denied*, 449 U.S. 854 (1980), and the text of the RLA, *see* 45 U.S.C. § 153 First (q), Judge Siragusa concluded that the Board, as an impartial adjudicator, had no vested interest in defending its decision on appeal, and that its role was limited by the RLA to forwarding the record of the proceeding to the district court.

Next the District Court addressed BLE's arguments. The Court found that, like the Board, BLE is not a proper party to a petition for review of a Board decision. "[L]ogically," Judge Siragusa explained, "the Union's role at the adjustment board is as an advocate for the employee; thus, the Union is more analogous to an attorney in a lower court proceeding, than to a party." *Ollman v. Special Bd. of Adjustment No. 1063*, No. 02-CV-6469 CJS, 2005 WL 602386,

---

[3] When Ollman failed to meet the February 20 deadline, the District Court gave him an extension of time to file his response.

-6-

at \*6 (W.D.N.Y. Mar. 14, 2005). Relying upon *System Federation, No. 30 v. Braidwood*, 284 F.Supp. 607, 610 (W.D. Ill. 1968), he also characterized the petition for review as a continuation of the proceedings before the Board, to which NSRC alone was a party defendant; it followed that a person seeking review of the Board's decision should name as respondent his opponent below. Judge Siragusa therefore concluded that, "[o]ther than the allegation that the Union breached its duty of fair representation, there is no basis for having it as a party in this proceeding." *Id.* at \*7.

As for Ollman's fair representation claim, the Court held that it was barred by a six-month statute of limitations. According to the exhibits attached to BLE's motion, the Board denied Ollman's claim on October 17, 2000; Linsey received a copy of the award on December 4, 2000 and informed Ollman of it by certified mail on December 5, 2000. Ollman did not contest these facts. Therefore, when Ollman filed suit in federal court on September 12, 2002, he was well outside the limitations period.

Last, the District Court addressed NSRC's argument regarding Ollman's assertion that he was not given notice of the hearing before the Board. Unlike the Board and BLE, NSRC conceded that it was a proper party to this action, but it maintained that Ollman's claim failed as a matter of law. Judge Siragusa agreed. He determined that when a union represents an employee before the Board, the RLA's "due notice" provision is satisfied by notice from the union to the employee. Judge Siragusa further found, citing the Linsey declaration and the Sykes letter, that BLE advised Ollman of the Board proceeding, and that, in fact, Ollman "was present and participated in the hearing."[4] *Id.* at \*8.

---

[4] The record does not support this finding. There is no evidence that Ollman attended the hearing before the Board. *See infra*, note 11.

C. *The Appeal to Our Court*

In April 2005, Ollman, still acting *pro se*, appealed the District Court's decision to our Court. He requested appointment of counsel. We granted that request in part, and ordered appointed counsel to brief the following questions:

> (a) where an employee is represented by his union before a Special Board of Adjustment, whether the notice requirement of § 3, First (j) of the Railway Labor Act, 45 U.S.C. § 153, First (j), is satisfied by providing notice to that employee`s union, rather than providing actual notice to the employee himself,
>
> (b) whether a union may be a proper party to a proceeding seeking review of the award of a Special Board of Adjustment pursuant to § 3, First (q) of the Railway Labor Act, 45 U.S.C. § 153, First (q), and
>
> (c) related issues.

*See Ollman v. Special Bd. of Adjustment No. 1063*, No. 05-1706-cv (2d Cir. May 22, 2006) (unpublished order). But we denied the motion and dismissed Ollman's appeal with respect to his duty of fair representation claim against BLE. *Id.*

Through counsel, Ollman now argues: (1) that the District Court erred in relieving Appellees of their statutory notice obligations (he urges that only notice from the Board directly to him suffices under the statute); (2) that the District Court incorrectly deemed the Board and BLE improper parties to the petition for review; and (3) that, "in the interests of justice, and in light of the Union's misleading communications" regarding how long Ollman had to seek review of the Board's award, we should reinstate his duty of fair representation claim and remand that claim to the District Court.

**II. DISCUSSION**

A. *Standard of Review*

-8-

We review a grant of summary judgment *de novo*, utilizing the same standard as the district court. *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Parks Real Estate*, 472 F.3d at 41 (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court reviewing a motion for summary judgment "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

B.    *Governing Law: The Railway Labor Act*

"The [RLA] was passed in 1926 to encourage collective bargaining by railroads and their employees in order to prevent . . . wasteful strikes and interruptions of interstate commerce." *Detroit & T.S.L.R. Co. v. United Transp. Union*, 396 U.S. 142, 148 (1969). It provided for the creation of local boards of adjustment to settle both the grievances that arose in the ordinary course of carrying out major agreements and policies and those that occurred incidentally in the course of a worker's employment.

It soon became apparent, however, that many carriers were refusing to participate on local boards, and that those local boards that had been formed tended to become deadlocked. *Union*

*Pac. R.R. Co. v. Price*, 360 U.S. 601, 610 (1959). Unadjusted disputes grew numerous. *Id.* at 611. Accordingly, Congress amended the RLA in 1934 to establish better procedures for resolving grievances, or "minor disputes," between employees, unions, and carriers. *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 725 (1945) (hereinafter "*Burley I*"), *adhered to on reh'g*, 327 U.S. 661 (1946) (hereinafter "*Burley II*"). The amended Act created the National Railroad Adjustment Board ("NRAB"), which consists of seventeen members selected by the carriers and seventeen by the employee representatives. 45 U.S.C. § 153 First (a). The Act states that "disputes may be referred by petition of the parties or by either party to the appropriate division of the [NRAB] with a full statement of the facts and all supporting data bearing upon the disputes." *Id.* § 153 First (i).[5]

Despite the creation of the NRAB, and despite provisions of the Act that allowed for the creation of local adjudicatory boards, the backlog problem persisted. In 1966, Congress amended the RLA again. It now authorizes a carrier and a representative of the employees of that carrier to agree to the formation of a "special adjustment board." *Id.* § 153 Second. Like the NRAB, the board sits in panels consisting of one person designated by the carrier, one person designated by the representative of the employees, and, in the event of a deadlock, one neutral panelist. *Id.* A special adjustment board may resolve disputes otherwise referable to the NRAB. *Id.*

The RLA governs how disputes proceed before an adjustment board. It states that "[p]arties may be heard either in person, by counsel, or by other representatives, as they may respectively elect," and that "the several divisions of the Adjustment Board shall give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes

---

[5] The NRAB is divided into four divisions. Each division hears claims from employees in particular job classifications. 45 U.S.C. § 153 First (h).

submitted to them." *Id.* § 153 First (j).[6] An adjustment board's award is binding on the parties and is enforceable in U.S. district court. *Id.* §§ 153 First (p), Second.

The RLA also provides for limited judicial review of NRAB and special adjustment board awards. Pursuant to 45 U.S.C. § 153 First (q), an aggrieved employee or other beneficiary of the order of the Board may file a petition for review in the district court for the district where the employee resides or where the principal operating office of the carrier is located. The district court has "jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such action as it may direct." *Id.*[7] But the scope of district court review is limited: the findings and order of the Board are conclusive unless the court finds that the Board has failed to comply with the requirements of the RLA, that the Board has exceeded its jurisdiction, or that a member of the Board has engaged in fraud or corruption. *Id.*[8]

C. *Whether the Notice Provision of the RLA May Be Satisfied By Notice to an Employee's Union, or Whether the Board Must Notify the Employee Directly*

---

[6] Although this notice provision is housed in the "First" part of § 153, and therefore may appear to refer only to the NRAB, courts of appeals have uniformly applied it to the special adjustment boards provided for by § 153 Second. *See, e.g.*, *English v. Burlington N. R.R. Co.*, 18 F.3d 741, 744 n.1 (9th Cir. 1994); *Bhd. of Ry., Airline & S.S. Clerks v. St. Louis Sw. Ry. Co.*, 676 F.2d 132, 135 n.2 (5th Cir. 1982); *O'Neill v. Pub. Law Bd. No. 550*, 581 F.2d 692, 695 (7th Cir. 1978); *Cole v. Erie Lackawanna Ry. Co.*, 541 F.2d 528, 532-33 (6th Cir. 1976).

[7] The district court also has jurisdiction to hear "hybrid" claims, such as contract claims against an employer and duty of fair representation claims against a union. *See Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 328-29 (1969).

[8] Again, although this provision is located in § 153 First, it has been applied with equal force to proceedings before a special adjustment board. *Cole*, 541 F.2d at 532; *Bhd. of Ry., Airline & S.S. Clerks v. Kansas City Terminal Ry. Co.*, 587 F.2d 903, 905-06 (8th Cir. 1978) ; *cf. Pyzynski v. N.Y. Cent. R.R. Co.*, 421 F.2d 854, 858 (2d Cir. 1970) (refusing to attribute to Congress "the intention to engage in [the] futile legislative exercise" that would result from applying the enforcement provision of § 153 First only to awards issued by the NRAB).

According to Ollman, the RLA's notice requirement contemplates that the Board must notify an involved employee himself – and not solely the employee's representative – of a pending Board hearing, *i.e.*, the employee must receive notice directly from the Board. We disagree, and join the Fifth and Seventh Circuits in holding that if an employee is represented by his or her collective bargaining representative, notice by the Board to that representative satisfies the RLA. *See O'Neill v. Pub. Law Bd. No. 550*, 581 F.2d 692, 695 (7th Cir. 1978) ("[W]here an individual employee authorizes his union to represent him before such boards and to receive any notices on his behalf, Section 153 First (j) does not require that actual notice be given to the individual employee."); *Bhd. of Ry., Airline & S.S. Clerks v. St. Louis Sw. Ry. Co.*, 676 F.2d 132, 136 (5th Cir. 1982) (holding that "the Board is obligated to notify an employee (or his representative) of any proceeding that may result in that employee's losing his position" and that "a letter of notification to one or two union representatives normally will ensure" adequate notice); *see also Steward v. Mann*, 351 F.3d 1338, 1346 (11th Cir. 2003) (stating, in *dicta*, that "in the usual case, when the board gives the union, rather than the employee, notice of the hearing, courts will not automatically set aside the board's award for failure to give due notice to the employee"); *United Steelworkers of Am. Local 1913 v. Union R.R. Co.*, 597 F.2d 40, 43 (3d Cir. 1979) (vacating and remanding a district court's dismissal of an employee's petition for review of a decision of an adjustment board because "[t]he notice requirement of the [RLA] clearly indicates that [the employee] *or his presently retained counsel* should be given notice [of the board hearing], and this was not done" (emphasis added)).

We pause here to comment on the terminology that Ollman, in his brief, has employed. He claims that the issue before us is "[w]hether the district court erred in relieving defendants of

their clear statutory notice requirements (to wit, the Special Board of Adjustment providing *actual notice directly to the plaintiff*).” (emphasis added).[9] This language, and the argument that the brief lays out, appear to conflate two concepts. The first concept involves whether, under the RLA, an employee has a right to be sent notice directly (what some cases have referred to as “personal notice” and others, confusingly, have called “actual notice”) or whether notice can instead be served on his representative, specifically, his union representative. That is the question that *this* case presents: whether service upon BLE, rather than direct service upon Ollman himself, satisfies the RLA’s notice requirement. For the reasons discussed below, we conclude that service upon BLE was sufficient.

The second conflated concept, which we need not address, is whether the “due notice” provision of the RLA requires that an employee (or the employee’s agent) actually receive notice, or whether in some circumstances constructive notice arising from actions of the Board or the employer undertaking to give notice (*e.g.*, by mailing notice to the employee’s agent or the agent’s last known address) can suffice. Because we hold that service upon BLE, rather than upon Ollman himself, satisfied the RLA’s notice requirement, and because the record shows that BLE in fact received notice of the pending Board hearing, we do not address the latter issue.

In reaching today’s decision, we turn first to the text of the RLA. *See United States v. Nelson*, 277 F.3d 164, 186 (2d Cir. 2002) (“The starting point in every case involving construction of a statute is the language itself.” (internal quotation marks omitted)). This is not a

---

[9] In a prior order in this case, a panel of this Court used a similar locution. It requested that the parties brief, *inter alia*, the following: “whether the notice requirement of § 3, First (j) of the Railway Labor Act, 45 U.S.C. § 153, First (j), is satisfied by providing notice to that employee’s union, rather than providing actual notice to the employee himself . . . .” *Ollman v. Special Bd. of Adjustment No. 1063*, No. 05-1706-cv (2d Cir. May 22, 2006) (unpublished order).

case, however, where the language of the statute is unambiguous. While the RLA requires "the several divisions of the Adjustment Board [to] give due notice of all hearings to the employee or employees and the carrier or carriers involved in any disputes submitted to them," 45 U.S.C. § 153 First (j), it does not define "due notice," and the meaning of "due notice" is not self-evident, *see Burley II*, 327 U.S. at 666 n.9. The Supreme Court has, however, had occasion to discuss the RLA and that statute's use of the term "due notice" – albeit in a slightly different context – in the *Burley* cases. *See Burley I*, 325 U.S. 711 (1945), *adhered to on reh'g*, *Burley II*, 327 U.S. 661 (1946). Accordingly, we turn to these cases for guidance in reading the statute.

The *Burley* cases addressed whether a collective bargaining representative had authority either to settle accrued monetary claims of certain railroad employees or to submit those claims for determination by the NRAB – to the exclusion of the employee's statutory rights. Disagreeing with the NRAB and the union, the *Burley I* Court answered 'no': "[The employee's] rights, to share in the negotiations, to be heard before the Board, *to have notice*, and to bring the enforcement suit, would become rights more of shadow than of substance if the union, by coming to agreement with the carrier, could foreclose his claim altogether at the threshold of the statutory procedure." 325 U.S. at 736 (emphasis added). In other words, an individual employee has statutorily created rights – including the right to notice – that "cannot be nullified merely by agreement between the carrier and the union." *Id.* at 740 n.39.

*Burley I* also stated, however, that an employee "may exercise independently" his statutorily created rights *or* he may "authorize the union to exercise [those rights] in his behalf." *Id.; see also* 45 U.S.C. § 153 First (j) (stating that parties appearing before the NRAB "may be heard either in person, by counsel, or by other representatives, as they may respectively elect").

-14-

And *Burley II*, the decision issued on rehearing, made clear that in many situations, an employee's collective agent will indeed have authority "either to settle finally the aggrieved individual employee's claims or to represent him exclusively before the Adjustment Board." 327 U.S. at 663. Drawing on agency principles, the *Burley II* Court observed that a union's by-laws, constitution, or other governing regulations could confer such authority on a union, as could "custom and usage." *Id.* at 663 & n.2.

The *Burley* cases do not, of course, resolve the question before us today. Nonetheless, they are telling. The employees who brought suit in *Burley* claimed, *inter alia*, that the award of the NRAB ought to be vacated because "they were entitled to have notice individually of the proceedings before the Board and none was given." *Burley I*, 325 U.S. at 720. And faced with this claim, the Court resolved the case in favor of the employees. It did so because it was unable to "say as a matter of law that respondents had authorized the Brotherhood to act for them . . . whether in submitting the cause or in representing them before the Board." *Id.* at 748. The parties had, moreover, conceded that the employees were not given notice of the proceeding, while the employees denied knowledge of the proceedings and of the award until after it was entered. Under the circumstances, the Supreme Court remanded the case to allow the District Court to determine "whether the award was effective in any manner to affect their rights." *Id.* "The crucial issue in this respect," the Supreme Court went on to say, "will be initially *whether respondents had authorized the Brotherhood in any legally sufficient manner to represent them, individually, in the Board's proceedings . . . .*" *Id.* (emphasis added). The Court thus suggested that *if* the employees had authorized the union to proceed on their behalf, notice to the union (*i.e.*, indirect notice rather than direct notice) would satisfy the RLA.

Drawing on *Burley I* and *II*, our prior reading of those decisions, and the persuasive decisions of two of our sister circuits, we hold that when an employee has authorized a union to take a grievance to an adjustment board and proceed before the board on the employee's behalf, and when the employee has taken no steps to withdraw that authorization, the employee's right to "due notice" of a pending board hearing is satisfied by timely notice to the employee's union.[10]

We emphasize that this holding does not leave an employee without recourse should the union fail to tell the employee of a pending board proceeding, or otherwise misrepresent the employee's interests. In that event, the employee may seek relief from the union for breach of its duty of fair representation. *See English v. Burlington N. R.R. Co.*, 18 F.3d 741, 745 (9th Cir. 1994) ("If the union representative does not fully inform the employee about the Board hearing or misleads the employee about his rights in those proceedings, the employee has a statutory remedy against the union for breach of its duty of fair representation."). We have remarked before that this duty – which, since the *Burley* decisions, has become "broadly applicable to all facets of the employee's relationship with his collective agent including particularly the settlement of grievances" – "provides a more effective means of protecting the employee against arbitrary abuses of settlement procedures" than assuming that an individual employee can act on her own to settle her grievance and then vacating an award when that assumption proves flawed. *Pyzanski v. N.Y. Cent. R.R. Co.*, 421 F.2d 854, 862 (2d Cir. 1970).

D. *Whether Summary Judgment Was Properly Granted to Appellees on Ollman's Due Notice Claim*

---

[10] *Cf. Pyzynski*, 421 F.2d at 859-60 (2d Cir. 1970) (reading the *Burley* decisions to hold "that a carrier may rely on the authority of a union to negotiate a conclusive settlement of an employee's grievance if it can be shown either that the union acted upon the basis of actual authority . . . or that the employee had notice or knowledge of the actions taken by the union in his behalf and took no steps to negate the union's authority").

Ollman contends that even if notice through a duly authorized union satisfies the RLA's notice requirement, the District Court erred in granting summary judgment in favor of Appellees because there was no evidence that BLE was authorized to represent him before the Board. Again, we disagree. At his on-the-property hearing, Ollman stated that he wished to be represented by two BLE officials. The record discloses no indications that Ollman withdrew that authority, and several indications that BLE believed that Ollman desired its continued representation (*e.g.*, its referral of the dispute to the Board and its preparation of Ollman's case for Board review).[11] Accordingly, we conclude that Ollman's due notice claim fails as a matter of law.[12] Summary judgment was properly granted.

E.    *Whether, under the RLA, the Board and BLE Are Proper Parties to a Petition for Review in District Court*

Because the issue remains relevant to Ollman's claim against BLE, we next address his claim that the District Court erred in deeming the Board and BLE improper parties to the petition for review. Like the District Court, we believe that our decision in *Skidmore v. Consolidated Rail Corp.*, 619 F.2d 157 (2d Cir. 1979), controls this issue. In *Skidmore*, a railroad employee appealed from a district court order dismissing his petition for review of an award of the NRAB.

---

[11] We do not adopt the District Court's finding that Ollman attended the hearing before the Board, as that finding is not supported by the record. We also place no weight on the Sykes letter (purporting to inform Ollman of the pending board hearing), as its veracity and admissibility are controverted.

[12] Even if Ollman had not authorized BLE to represent him in his appeal to the Board, he could not prevail on these facts. Had BLE not taken Ollman's appeal to the Board, NSRC's termination decision would have become final, because Ollman himself did not appeal the adverse decision. Accordingly, Ollman could have suffered no greater harm from the Board's failure to notify him of the appeal hearing than he would have suffered from his own failure to take the appeal himself. Without authorization, either express or imputed, to BLE to represent him, he would have had no appeal.

-17-

After concluding that the petitioner's claim was foreclosed by prior litigation, and that in any event, the petition was properly dismissed because the district court lacked power to remedy the error complained of, we noted that the NRAB was not a proper party to the petition for review. We explained that, unlike an agency such as the Federal Trade Commission, which both adjudicates and quasi-legislates, and therefore maintains an interest in each decision, the NRAB functions solely as an impartial adjudicatory tribunal and so has no inherent interest in defending its decisions on appeal. *Id.* at 159; *accord Mitchell v. Union Pac. R.R. Co.*, 408 F.3d 318, 320 (7th Cir. 2005); *Sheehan v. Union Pac. R.R. Co.*, 576 F.2d 854, 855 (10th Cir. 1978), *rev'd on other grounds*, 439 U.S. 89 (1978). In such a scheme, the adjudicator has no stake in the outcome of a petition for review, and so is not a proper party to it. *Skidmore*, 619 F.2d at 159.

A special board of adjustment is as much an impartial adjudicator as the NRAB – indeed, special boards resolve disputes otherwise referable to the NRAB and are its functional equivalent – so they, too, are not proper parties to a petition for review under the RLA. *See Merchants Despatch Transp. Corp. v. Sys. Fed. No. One*, 444 F. Supp. 75, 77 (N.D. Ill. 1979). Accordingly, we hold that the District Court correctly dismissed the Board from this proceeding.[13]

As for BLE, its involvement in the dispute before the Board was as Ollman's representative. Therefore, we agree with the District Court that BLE was properly made party to the petition for review only to the extent that Ollman asserted a claim that BLE breached its duty

---

[13] It appears that at one time aggrieved employees or carriers routinely named the adjustment board as a respondent in petitions for review because without the board as a party, the district court had no way of obtaining a record for review and hence no means of reviewing an award. This problem was solved by the 1966 amendments to the RLA, which provide for full judicial review of the award and require the NRAB to transmit a full record of its proceedings to the district court when a petition for review has been filed. *See Radin v. United States*, 699 F.2d 681, 686 n.11 (4th Cir. 1983); 45 U.S.C. § 153 First (q).

-18-

of fair representation owed to him. To the extent that Ollman sought to use his petition for review to vacate the Board's award because the Board proceeding failed to comply with the procedural requirements of the RLA, BLE was not a proper respondent. The appropriate respondent was NSRC, the party whose disciplinary actions Ollman contested before the Board.

F. *Whether We Should Reinstate Ollman's Duty of Fair Representation Claim and Vacate the District Court's Dismissal of That Claim*

While he is "aware that this Court has dismissed the hybrid/duty of fair representation [] claim," Ollman asks us "to consider equitable reasons for reinstating [that] claim under the related issues prong" of our May 22, 2006 order. Specifically, he contends that BLE should have been equitably estopped from asserting a statute of limitations defense because it misrepresented to him the length of the limitations period: In its December 4, 2000 letter it stated that he had two years to file a challenge to the Board's award, but said nothing about the six-month statute of limitations that governed claims against the union. Ollman claims that he relied on this letter to his detriment and has now been unfairly deprived of his opportunity to litigate his fair representation claim.

We recognize our authority to revisit the motions panel's decision to affirm the District Court's dismissal of Ollman's duty of fair representation claim. *See Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("[T]he law of the case doctrine does not deprive an appellate court of discretion to reconsider its own prior rulings, even when the ruling constituted a final decision in a previous appeal."). But we will not exercise that authority "absent cogent or

-19-

compelling reasons," *id.* (internal quotation marks omitted), and given the weakness of Ollman's equitable estoppel argument,[14] we decline to do so in this case.

### III.    CONCLUSION

In sum, Ollman's claim against NSRC fails because Ollman failed to show the existence of a genuine issue of material fact negating BLE's authority to represent him before the Board, and it is undisputed that BLE received received "due notice" of the Board proceeding. Ollman's claim against the Board fails because, although a special adjustment board's awards may be reviewed by a district court, a board is not a proper party to a petition for review. As for BLE, it is a proper party to a petition for review under the RLA only insofar as the plaintiff claims it breached its duty of fair representation. But in this case, a prior panel of our Court has already affirmed the dismissal of Ollman's claim against BLE for breach of the duty of fair representation. We decline to revisit that panel's considered decision. For these reasons, the decision of the District Court is AFFIRMED.

---

[14] In this regard we note that BLE's letter contained neither false nor misleading information. It correctly advised Ollman that he had two years to file a suit challenging the Board's award. It did not address the separate issue of how long he had to sue BLE for breach of duties owed to him. But there was no reason to do so, as there had been no suggestion that he found fault with BLE's representation. Under the circumstances, we can see no reason why BLE should be equitably estopped from raising the untimeliness of Ollman's suit against it.