08-0854-cv
*United Transportation Union and Carmen J. Famulare v. National Railroad Passenger Corporation (Amtrak)*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: April 3, 2009)                    Decided: December 9, 2009)

Docket No. 08-0854-cv

UNITED TRANSPORTATION UNION and CARMEN J. FAMULARE,

*Plaintiffs-Appellees*,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),

*Defendant-Appellant*.

Before: CABRANES and HALL, *Circuit Judges*, and SULLIVAN, *District Judge*.[*]

Defendant-appellant National Railroad Passenger Corporation (Amtrak) appeals from an order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*), granting plaintiffs-appellees United Transportation Union and Carmen J. Famulare's motion for summary judgment, denying defendant-appellant's motion for summary judgment, and setting aside an award issued by a special adjustment board constituted pursuant to the Railway Labor Act. The district court found that the Board failed to comply with the Railway Labor Act by upholding the termination of plaintiff-appellee Famulare. We reverse, and find that under the narrow scope of judicial review afforded to the labor board decision in this matter, the Board acted properly in issuing

---

[*] The Honorable Richard J. Sullivan, of the United States District Court for the Southern District of New York, sitting by designation.

its award.

Reversed and Remanded.

KEVIN C. BRODAR, Associate General Counsel (Clinton J. Miller, III, General Counsel, *on the brief*), United Transportation Union, Cleveland, OH, *for United Transportation Union and Carmen J. Famulare.*

THOMAS E. REINERT, JR., (Jonathan C. Fritts and Kirsten B. White, *on the brief*), Morgan Lewis & Bockius, LLP, Washington, DC, *for National Railroad Passenger Corporation (Amtrak).*

RICHARD J. SULLIVAN, *District Judge*:

National Railroad Passenger Corporation (Amtrak) appeals from an order of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) granting United Transportation Union and Carmen J. Famulare's motion for summary judgment, denying Amtrak's motion for summary judgment, and setting aside an award issued by Public Law Board No. 6865 (the "Board"), a special adjustment board constituted pursuant to the Railway Labor Act, 45 U.S.C. § 151 *et seq.* (the "RLA").[1]

This case raises what appears to be a novel question in this Circuit involving the interpretation of the RLA and the scope of judicial review of a labor board's compliance with 45 U.S.C. § 152 Third ("§ 152 Third") under 45 U.S.C. § 153 First (q) ("§ 153 First (q)"). Put less

---

[1] The special adjustment board at issue was denominated "Public Law Board No. 6865" and was established by agreement of the parties, pursuant to 45 U.S.C. § 153 Second, for resolving a dispute otherwise referable to the National Railroad Adjustment Board. The original 1926 RLA provided for the creation of local boards of adjustment to arbitrate disputes between railroad carriers and their employees. *See Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 245-46 (2d Cir. 2008). In 1934, Congress amended the RLA to create the National Railroad Adjustment Board, and in 1966, Congress again amended the RLA to allow for the establishment of "special adjustment boards." *See id.* The National Railroad Adjustment Board is composed of 34 members — 17 chosen by carriers and 17 chosen by employee unions. *See id.* at 245. Special adjustment boards sit as panels with one panelist designated by the carrier, one designated by the union and, in the event of a deadlock, one neutral panelist. *Id.* at 246. The parties in this matter availed themselves of a "special adjustment board," although the differences between these various permutations of labor boards created under the RLA are not relevant to this decision.

2

obliquely, we must determine whether the Board failed to comply with the RLA or exceeded its jurisdiction under the RLA when it held that Amtrak was permitted to discipline an employee for conduct that occurred while that employee was functioning as a union representative. The district court found that such a holding by a labor board fails to comply with the RLA, and did not reach the jurisdictional question. For the reasons stated below, we reverse, and find both that the Board's decision complied with the RLA and that the Board acted within the proper scope of its jurisdiction.

## I. BACKGROUND

Carmen J. Famulare began working as a conductor for Amtrak in 1994. At the time relevant to this case, Famulare also served as the local chairman of the United Transportation Union, the labor union authorized to represent certain classes of Amtrak employees. On February 4, 2005, Famulare represented an Amtrak employee at a disciplinary hearing, during which Famulare allegedly attempted to bribe a witness by offering free transportation on Amtrak trains between Poughkeepsie, New York, and Buffalo, New York. Amtrak subsequently charged Famulare with violating its "Service Standards for Train Service and On-Board Service Employees," as well as interfering with the contractual disciplinary process between Amtrak and the United Transportation Union. Although Famulare denied the allegations, after a formal investigation initiated by Amtrak, an Amtrak hearing officer found Famulare guilty of the alleged conduct. In so finding, the hearing officer determined that "[t]he mere suggestion that any employee of [Amtrak], while acting in the capacity as a union representative could, with complete immunity, engage in acts of bribery or dishonesty for the purpose of influencing the outcome of a disciplinary investigation is simply not tenable." J.A.8 (Decision of Hearing Officer Ronald Nies, dated March 17, 2005, Case No. 05-066). Amtrak immediately terminated Famulare's employment, effective March 17, 2005.

3

The United Transportation Union pursued an appeal on Famulare's behalf through binding arbitration before the Board. After reviewing the record, the Board concluded that Famulare was guilty as charged. The Board rejected the argument that Amtrak was not permitted to discipline Famulare while he was acting within the scope of his union duties, explaining that "[w]e have considered all the evidence, arguments[,] awards[,] and cases presented by the parties and conclude that significant latitude is provided to employee-representatives when functioning as such. However, that latitude falls far short of being a 'cloak of immunity,' and does not cover activities such as that involved in this case." *Nat'l R.R. Passenger Corp. (Amtrak) v. United Transp. Union*, Award No. 10, Case No. 24 (Mar. 9, 2006) (Johnson, Arb.).

The United Transportation Union and Famulare next appealed the Board's decision to the United States District Court for the Northern District of New York, pursuant to § 153 First (q).[2] Ruling on cross-motions for summary judgment, the district court vacated the Board's decision, finding that the RLA "does not provide employers with any say over the conduct of the employees' representative while the representative is engaged in his or her representative capacity; in fact, the Act forbids it." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, No. 06 Civ. 503 (LEK), slip op. at 12 (N.D.N.Y. Feb. 4, 2008). Accordingly, the district court set aside the Board's award, granting the United Transportation Union and Famulare's motion for summary judgment, and

---

[2] This provision states, in relevant part:

> If any employee or group of employees, or any carrier, is aggrieved by the failure of any division of the Adjustment Board to make an award in a dispute referred to it, or is aggrieved by any of the terms of an award or by the failure of the division to include certain terms in such award, then such employee or group of employees or carrier may file in any United States district court in which a petition under paragraph (p) could be filed, a petition for review of the division's order.

45 U.S.C. § 153 First (q).

denying Amtrak's motion for summary judgment. *Id.* at 13-14.

This appeal followed.[3]

## II. STANDARD OF REVIEW

We review a grant of summary judgment under Rule 56 of the Federal Rules of Civil Procedure *de novo*, applying the same standard as the district court. *Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006). In a motion for summary judgment, the moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). Pursuant to Rule 56(c), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

### A. The RLA's Dispute Resolution Framework

The RLA was enacted in 1926 to provide for the prompt and orderly settlement of labor disputes between railway carriers and their employees, with the goal of avoiding strikes and the

---

[3] The district court granted Amtrak's motion to stay its order vacating the Board's award pending the resolution of this appeal, finding that "the issues involved are of substantial import to the parties and the public at large and the law in this area is far from certain." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, No. 06 Civ. 503 (LEK), slip op. at 2 (N.D.N.Y. Feb. 15, 2008).

resultant disruption to interstate commerce. *See* 45 U.S.C. § 151a; *see also Detroit & Toledo Shore Line R.R. Co. v. United Transp. Union*, 396 U.S. 142, 148 (1969). To effectuate this purpose, the RLA imposes distinct dispute resolution procedures for what the Supreme Court has labeled "minor" and "major" disputes. *See Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723-25 (1945). For "major" disputes, the RLA requires "voluntary processes of negotiation, mediation, voluntary arbitration, and conciliation." *Id.* at 725. For "minor" disputes, "[t]he labor-management adjustment boards, created pursuant to 45 U.S.C. § 184, have exclusive jurisdiction." *Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 789 F.2d 139, 141 (2d Cir. 1986); *see also Bhd. of R.R. Trainmen v. Chi. River & Ind. R.R. Co.*, 353 U.S. 30, 39 (1957); *Ollman v. Special Bd. of Adjustment No. 1063*, 527 F.3d 239, 245-46 (2d Cir. 2008).

This Court has explained the differences between "major" and "minor" disputes on several occasions. *See, e.g.*, *Bhd. of Locomotive Eng'rs Div. 269 v. Long Island R.R. Co.*, 85 F.3d 35, 37-38 (2d Cir. 1996); *CSX Transp., Inc. v. United Transp. Union*, 950 F.2d 872, 874 (2d Cir. 1991); *Pan Am. World Airways, Inc.*, 789 F.2d at 140-41. In brief, "major disputes" "relate[] to disputes over the formation of collective agreements or efforts to secure them," while "minor disputes" "contemplate[] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." *Elgin*, 325 U.S. at 723. We have specifically held that the category of "minor disputes" encompasses "disciplinary disputes even if involving employee discharge." *Pan Am. World Airways, Inc.*, 789 F.2d at 141.

There is no dispute that Amtrak is a "carrier" within the meaning of the RLA, 45 U.S.C. § 151 First, or that Famulare is an "employee" of such a carrier, 45 U.S.C. § 151 Fifth. There also

appears to be no disagreement that Amtrak's termination of Famulare qualified as a "minor dispute" and therefore was subject to compulsory arbitration before the Board. Here, as noted, Famulare and the United Transportation Union pursued their grievance before one such board, Public Law Board No. 6865, which found in favor of Amtrak. Famulare and the United Transportation Union then appealed to the district court pursuant to § 153 First (q), which set aside the Board's decision, holding that the Board "failed to comply" with § 152 Third of the RLA.

## B. Judicial Review of the Board's Decision

Section 153 First (q) of the RLA allows for a limited judicial review of a labor board's ruling. The statute provides:

> On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, [1] for failure of the division to comply with the requirements of this chapter, [2] for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or [3] for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q). The Supreme Court has characterized the scope of judicial review of a labor board's decision as "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (internal quotation marks omitted). Indeed, the Supreme Court "time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board." *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 263 (1965); *see also Sheehan*, 439 U.S. at 94 ("Congress considered it essential to keep these so-called 'minor' disputes within the Adjustment Board and out of the courts."). This Court has also reiterated that review of Board decisions "must be extremely limited." *CSX Transp., Inc.*, 950 F.2d at 877. "Indeed, perhaps review is a misnomer; where fraud is not an issue we ask only whether the arbitrators did the job they were told to do — not whether they did it

7

well, or correctly, or reasonably, but simply whether they did it." *Id.* (quoting *Bhd. of Locomotive Eng'rs v. Atchison, Topeka & Santa Fe Ry. Co.*, 768 F.2d 914, 921 (7th Cir. 1985)) (internal quotation marks and alterations omitted); *see also Skidmore v. Consol. Rail Corp.*, 619 F.2d 157, 159 (2d Cir. 1979). "The federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence supports the Board's awards." *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970); *cf. Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1276 (11th Cir. 1982) ("It is thus firmly established that courts will not review the substance of a labor arbitration award for ordinary error and that courts will not vacate an award because a judge might have reached a different result."); *Air Line Pilots Ass'n, Int'l v. Tex. Int'l Airlines, Inc.*, 656 F.2d 16, 19 (2d Cir. 1981) ("The role of the courts in enforcing substantive obligations under the RLA is circumscribed by the Act's unique history and dispute-resolution framework."); *Int'l Ass'n of Machinists & Aerospace Workers, Dist. 776 v. Tex. Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976) (noting that courts must "scrupulously avoid the invasion of the arbitration panel's sphere and the enticement of ruling on the 'intrinsic merits' of the dispute").

On appeal, United Transportation Union and Famulare invoke the first two prongs of § 153 First (q), and contend that the Board's decision did not comply with the requirements of the RLA and that the Board exceeded the scope of its jurisdiction. For the reasons set forth below, each of these arguments fails.

## 1. Failure to Comply with § 152 Third

The district court in this case set aside the Board's decision "for failure of the division to comply with the requirements of this chapter," that is, the "failure to comply" prong of § 153 First

(q).  Typically, a federal court's review of board decisions under the "failure to comply" prong has been limited to determining whether boards have complied with the RLA's procedural obligations. *See Steward v. Mann*, 351 F.3d 1338, 1347-48 (11th Cir. 2003); *Meeks v. Ill. Cent. Gulf R.R.*, 738 F.2d 748, 750 (6th Cir. 1984); *Jones v. St. Louis-S.F. Ry. Co.*, 728 F.2d 257, 262 (6th Cir.  1984); *Bhd. of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Employees v. St. Louis Sw. Ry. Co.*, 676 F.2d 132, 135 (5th Cir. 1982).  *See generally The Railway Labor Act* at 428 (Am. Bar Ass'n, 2d ed. 2005) ("Courts also review decisions of adjustment boards for compliance with the procedural requirements of Section 3 of the RLA.").  This case is distinguishable, as it does not involve the Board's failure to adhere to the RLA's procedural obligations, but rather involves a carrier's alleged failure to comply with the obligations imposed upon it by § 152 Third, and the Board's alleged failure to comply with the RLA by issuing an erroneous award.  In other words, Famulare and the United Transportation Union challenge the merits of the Board's decision, not the procedures by which it was reached.  Although Amtrak vigorously contends that this distinguishing characteristic precludes judicial review of the Board's decision under § 153 First (q), we conclude that such review is clearly contemplated by the unambiguous text of the RLA.  *See Estate of Pew v. Cardarelli*, 527 F.3d 25, 30 (2d Cir. 2008) ("We first look to the statute's plain meaning; if the language is unambiguous, we will not look farther."); *United States v. Nelson*, 277 F.3d 164, 186 (2d Cir. 2002) ("The starting point in every case involving construction of a statute is the language itself." (internal quotation marks omitted)).  Under the plain language of § 153 First (q), a decision by a labor board may be set aside "for failure of the division [*i.e.*, the labor board] to comply with the requirements of this chapter."  Section 152 Third is part of the same chapter of the United States Code as  § 153 First — namely, chapter 8 of Title 45.  Since a review of compliance with the

9

requirements of this chapter necessarily implicates the merits of the decision, we agree with the district court that judicial review of a labor board's decision under § 153 First (q) for "failure to comply" with § 152 Third is proper.

Our determination that federal courts may review whether a labor board's award complies with § 152 Third does not end our inquiry however. We turn now to the question of whether the Board's award in this matter did, in fact, comply with that section and to the related argument that the Board exceeded the scope of its jurisdiction.

Section 152 Third is entitled "[d]esignation of representatives," and provides that:

> Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

45 U.S.C. § 152 Third.

"Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). Looking first to the whole statutory text, we note that other provisions of the RLA suggest that the term "representative" refers to the *union* or other *organization* designated to represent an employee, and not merely to an individual official within that organization. *Cf. Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) (noting that under "the normal rule of statutory construction," "identical words used in different parts of the same act are intended to have the same meaning" (internal quotation marks omitted)). For example, 45 U.S.C. § 152 Ninth ("§ 152 Ninth") provides that if a dispute arises among employees

10

"as to who are the *representatives* of such employees," it is the duty of a mediation board to resolve this dispute, and thereafter, "the carrier shall treat with the *representative so certified as the representative of the craft or class for the purposes of this chapter*." 45 U.S.C. § 152 Ninth (emphases added).[4] The Supreme Court has also found that the term "influence," as used in § 152 Third, "plainly means pressure, the use of the authority or power of either party to induce action by the other in derogation of what the statute calls '*self-organization*.'" *Tex. & N.O.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 568 (1930) (emphasis added).

The text of § 152 Third and its interpretation by the Supreme Court is consistent with the understanding that the statute "primarily" addresses precertification rights of unrepresented employees, meaning, the rights of unrepresented employees to organize an independent union free from employer interference. *See Virginian Ry. Co. v. System Fed'n No. 40*, 300 U.S. 515, 543 (1937) (interpreting § 152 Third to read that "employees [are] free to organize and to make choice of their representatives without the 'coercive interference' and 'pressure' of a company union organized and maintained by the employer"); *see also Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440 (1989) (noting that, "[f]rom the time of our very first opportunity to interpret the 1934 amendments, we have viewed them as addressing primarily the precertification rights and freedoms of unorganized employees"). Our sister circuits have likewise emphasized the precertification focus of § 152 Third. *See Int'l Bhd. of Teamsters, AFL-CIO v. United Parcel Serv. Co.*, 447 F.3d 491, 501 (6th Cir. 2006) (finding that § 152 Third "protects the rights of employees to choose their own collective bargaining representative, not to choose any

---

[4] Section 152 Ninth goes on to state, echoing § 152 Third, that the mediation board shall resolve the dispute regarding the designation of the proper "representative" of the employees "in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152 Ninth.

member of any committee ever set up by a collective bargaining agreement, whether called a 'representative' or not" (internal citations, quotation marks, and alterations omitted)); *Air Line Pilots Ass'n, Int'l. v. Guilford Transp. Indus., Inc.*, 399 F.3d 89, 103 (1st Cir. 2005) ("Generally speaking, 45 U.S.C. § 152, Third and Fourth prohibit carriers from taking actions designed to interfere with employees' rights to organize and bargain collectively. The Supreme Court emphasized this point in *TWA*, in which it held that once a union is certified, employees' rights under section 152, Third and Fourth are narrowly circumscribed."); *see also Ass'n of Flight Attendants, AFL-CIO v. Horizon Air Indus., Inc.*, 280 F.3d 901, 905 (9th Cir. 2002); *Bhd. of Locomotive Eng'rs v. Kan. City S. Ry. Co.*, 26 F.3d 787, 795 (8th Cir. 1994); *Dempsey v. Atchison, Topeka & Santa Fe Ry. Co.*, 16 F.3d 832, 841 (7th Cir. 1994); *Johnson v. Express One Int'l, Inc.*, 944 F.2d 247, 252 (5th Cir. 1991); *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 707 (3d Cir. 1982). Section 152 Third thus aims to promote what has been deemed the "essential foundation of the [RLA's] statutory scheme" — "[f]reedom of choice in the selection of representatives." *Tex. & N.O. R.R. Co.*, 281 U.S. at 569. "The effectiveness of [the RLA's] private dispute resolution procedures depends on the initial assurance that the employees' putative representative is not subject to control by the employer . . . ." *Trans World Airlines*, 489 U.S. at 441.

Notwithstanding the precertification focus of § 152 Third, the section also protects the rights of employees in the postcertification context, that is, the rights of employees even after they have successfully organized. Specifically, this Court has held that, in certain circumstances, a postcertification suit may be brought in federal court directly under § 152 Third, bypassing the mandatory arbitration imposed by the RLA. *See Pan Am. World Airways, Inc.*, 789 F.2d at 141 ("Running through Congress' exacting allocation of administrative jurisdiction is a 'thread' of

12

judicial intervention in cases in which, but for the general jurisdiction of the federal courts[,] there would be no remedy to enforce the statutory commands which Congress had written into the Railway Labor Act." (quoting, *inter alia*, *Switchmen's Union v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943))).  Such direct judicial intervention is warranted, however, only if the RLA's statutorily created labor board procedure is found to be ineffective, and we have enumerated three specific circumstances in which this would be the case:  "where it is clear that the employer's conduct [1] has been motivated by anti-union animus or an attempt to interfere with its employees' choice of their collective bargaining representative, or [2] constitutes discrimination or coercion against that representative, or [3] involves acts of intimidation which cannot be remedied by administrative means." *Pan Am. World Airways, Inc.*, 789 F.2d at 142 (internal citations, quotations, and alterations omitted); *see also Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers*, 915 F.2d 43, 51 (1st Cir. 1990).

The district court did not invoke this line of cases in its decision, recognizing that Famulare and the United Transportation Union were appealing a labor board's decision rather than attempting to bypass the RLA's mandatory arbitration procedures for minor disputes by bringing suit directly in federal court under § 152 Third. *See United Transp. Union*, No. 06 Civ. 503 (LEK), slip op. at 11 n.9.  Nonetheless, the district court found that, in the postcertification context, § 152 Third provides employees of a railroad carrier with a *per se* sanctuary from discipline for misconduct engaged in while functioning as a union official.  The district court appears to have reached this conclusion by interpreting the language of § 152 Third, finding that "[f]iring an employee for conduct committed as a union representative, and the threat thereof, plainly interferes with employees' choice of the representative."  *Id.* at 12.  As just noted, however, the term

13

"representative," as used in the RLA, refers to a union or other organization designated to represent an employee, and not merely to an individual official. Moreover, we find no textual or precedential support for the district court's conclusion that § 152 Third creates an unassailable "cloak of immunity" for the misconduct of railroad employees functioning in a representative capacity. We also agree with the Board that such a doctrine would have deleterious effects on the "time-tested disciplinary process" through which railroad labor disputes are resolved. Finally, although neither the Board nor the district court addressed the issue, we find it worth emphasizing that Famulare sought to influence the testimony of a witness by offering *free Amtrak travel at Amtrak's expense*. Thus, he was attempting to undermine Amtrak's disciplinary process and effectively stealing from his employer at the same time. It is beyond doubt that an employer retains the authority to discipline its employees for such conduct, regardless of the context in which it occurs.

## 2. The Scope of the Board's Jurisdiction

Although the district court did not reach the issue, as an alternative ground for affirmance, United Transportation Union and Famulare argue that the Board somehow exceeded the scope of its jurisdiction — the second prong of § 153 First (q) — by rejecting their "cloak of immunity" argument. Our review of whether a labor board acts within the scope of its jurisdiction in interpreting and applying § 152 Third is synonymous with the determination of whether a labor board acts within the proper scope of its jurisdiction in interpreting a collective bargaining agreement. This is because pursuant to § 152 Eighth, § 152 Third is "made a part of the contract of employment between the carrier and each employee, and shall be held binding upon the parties, regardless of any other express or implied agreements between them." 45 U.S.C. § 152 Eighth. A board therefore acts within its jurisdiction by interpreting and applying § 152 Third as if it were part

14

of the collective bargaining agreement between the carrier and the employee.[5]

Here, Famulare and the United Transportation Union argued before the Board that Amtrak acted improperly in terminating Famulare's employment because Famulare's actions were taken while he was performing his duties as a union representative. The Board clearly considered, and rejected, this argument:

> We have considered all the evidence, arguments[,] awards[,] and cases presented by the parties and conclude that significant latitude is provided to employee-representatives when functioning as such. However, that latitude falls far short of being a "cloak of immunity," and does not cover activities such as that involved in this case. If representatives from either side were permitted to bribe or otherwise suborn witnesses, the time-tested disciplinary process would have no validity or credibility. Under these circumstances, we find that [Famulare] was subject to discipline if the charges were proved. Additionally, we find no credible evidence of union animus.

*Nat'l R.R. Passenger Corp. (Amtrak)*, Award No. 10, Case No. 24.

The Board thus specifically found that any immunity bestowed upon railroad employees while functioning as union representatives did not cover Famulare's activities, and further found no credible evidence of "anti-union animus" in Amtrak's decision to terminate Famulare's employment. We hold that, given these findings, the Board did not exceed the scope of its jurisdiction, but rather "did the job they were told to do," namely, consider all the available evidence and make findings as to whether Amtrak's termination of Famulare's employment constituted a violation of the collective bargaining agreement, which included § 152 Third.

---

[5] We have found that it is permissible for an arbitrator to encroach upon interpretation of statutory rights "in cases like this where issues of statutory interpretation and of contractual interpretation seem inextricably intertwined." *CSX Transp.*, 950 F.2d at 878 (alteration, internal citation, and internal quotation marks omitted).

## IV.  CONCLUSION

For the reasons stated above, we find that the Board both complied with the RLA and acted within the proper scope of its jurisdiction.  The August 22, 2008 order of the district court is therefore REVERSED and the case is REMANDED for entry of judgment in favor of defendant-appellant.