Drita and Florim GASHI, Plaintiffs,

v.

**GRUBB & ELLIS PROPERTY MANAGEMENT SERVICES, INC. & Prospect Grove Condominium Association, Defendants.**

**Civil Action No. 3:09–CV–1037 (JCH).**

United States District Court,
D. Connecticut.

June 23, 2011.

**14**

Greg J. Kirschner, Hartford, CT, for Plaintiffs.

Christopher T. Parkin, Dove A.E. Burns, Winget Spadafora & Schwartzberg, Stamford, CT, for Defendants.

## RULING RE: PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 54)

JANET C. HALL, District Judge.

## I. INTRODUCTION

Plaintiffs, Drita and Florim Gashi ("Gashis"), bring this case against defendants Grubb & Ellis Property Management Services, Inc. ("Grubb & Ellis") and Prospect Grove Condominium Association ("Prospect Grove") (hereafter "the defen-

dants"), alleging that the defendants discriminated against the Gashis on the basis of their familial status, in violation of the Fair Housing Amendments Act of 1988 ("FHA"), 42 U.S.C. § 3601, *et seq. See* First Am. Compl. Counts I & II. In Count I, the Gashis claim intentional discrimination under the 42 U.S.C. § 3604(a)-(c), as well as intentional interference with the Gashis' right to fair housing in violation of 42 U.S.C. § 3617. *See id.* ¶¶ 21–23. In Count II, the Gashis claim that the defendants' occupancy policy has a disparate impact on families with children and operates to exclude families with children from living at the Prospect Grove Condominium, in violation of 42 U.S.C. § 3604(a)-(c). *See id.* ¶¶ 24–26.

The Gashis have filed a Motion for Partial Summary Judgment (Doc. No. 54) on the issue of the defendants' liability for discrimination on the basis of familial status under the FHA. The Gashis claim they are entitled to summary judgment on their disparate impact claim under 42 U.S.C. § 3604(a) and (b) and that undisputed facts demonstrate that defendants made an unlawful discriminatory statement in violation of the FHA, 42 U.S.C. § 3604(c). *See* Pls. Mem. Supp. Mot. Summ. J. at 1.[1]

For the following reasons, the court grants the Gashis' Motion for Partial Summary Judgment in part and denies in part.

## II. FACTUAL BACKGROUND

The majority of the facts in this case are not in dispute. Mrs. Gashi purchased a one bedroom condominium in the Grove Street building at Prospect Grove in 2003. L.R. 56(a)(1) Stmt. ¶ 2. L.R. 56(a)(2) Stmt. ¶ 2. The Gashis were married in 2005, and

---

1. The Gashis' Motion does not address Count I of the Amended Complaint. Accordingly, the court's Ruling only applies to the dispa-

rate impact claim in Count II of the Amended Complaint.

the two resided at the Prospect Grove Apartment together. *See* L.R. 56(a)(2) Stmt. ¶ 4; Defs. Mem. Opp. Summ. J., Ex. G at 14. On September 20, 2006, Mrs. Gashi gave birth to a son and brought him to the Prospect Grove apartment three days later. L.R. 56(a)(1) Stmt. ¶ 5; L.R. 56(a)(2) Stmt. ¶ 5.

Prospect Grove has an occupancy policy ("occupancy policy") that limits occupancy to no more than two persons per bedroom in each dwelling unit. L.R. 56(a)(1) Stmt. ¶ 1, L.R. 56(a)(2) Stmt. ¶ 1. As a result of the Gashi family expanding to three people, Prospect Grove enforced its occupancy policy against the Gashis, notifying the Gashis by letter that they were in violation of the policy because two adults and one child resided in the apartment and directing them to rectify the situation. *See* L.R. 56(a)(1) Stmt. ¶ 7–9; L.R. 56(a)(2) Stmt. ¶ 7–9. Additionally, the letter asserted that the Gashis' occupancy violated the Stamford Fire Code. Am. Answer ¶ 11. As a result of this letter, the Gashis vacated and sold their apartment. L.R. 56(a)(1) Stmt. ¶ 10; L.R. 56(a)(2) Stmt. ¶ 10.

Grubb & Ellis does not have any information regarding the occupancy policy, including why it was adopted. L.R. 56(a)(1) Stmt. ¶ 15; L.R. 56(a)(2) Stmt. ¶ 15. In addition, Prospect Grove has no documentation indicating that the building requires an occupancy policy because of structural or system limitations. L.R. 56(a)(1) Stmt. ¶ 16; L.R. 56(a)(2) Stmt. 16. Finally, neither the Stamford Fire Code nor the Stamford housing code limits occupancy to two persons per bedroom. L.R. 56(a)(1) Stmt. ¶¶ 20, 33; L.R. 56(a)(2) Stmt. ¶¶ 20, 33.

## III. STANDARD OF REVIEW

A motion for summary judgment "may properly be granted ... only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir.2009). Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Id.* In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 274 (2d Cir.2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir.2009). Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment ... must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir.2009) (quoting Fed.R.Civ.P. 56(e)). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir.2008) (quoting *Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir.2007)); *see also Havey v. Homebound Mortg., Inc.*, 547 F.3d 158, 163 (2d Cir.2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

## IV. DISCUSSION

The court grants partial summary judgment in favor of the Gashis with regard to

their disparate impact claim because the defendants have failed to raise a genuine issue of fact with regard to whether Pleasant Grove's occupancy policy has a disparate impact on families with children. The court does not grant summary judgment in favor of the Gashis with regard to the alleged discriminatory statement because, although the facts are undisputed, a reasonable jury could return a verdict in favor of the defendants.

### A. *Disparate Impact*

■ Under the FHA, it is unlawful to refuse to rent housing to any person because of their familial status. 42 U.S.C. § 3604(a). A disparate impact analysis under the FHA examines whether a facially neutral policy has a differential impact or effect on a particular group. *See Huntington Branch N.A.A.C.P. v. Huntington*, 844 F.2d 926, 933 (2d Cir.1988). To prevail on a disparate impact claim under the FHA, plaintiffs must first establish a prima facie case by showing that the challenged policy has a discriminatory effect, in that it actually or predictably results in discrimination. *See id.* at 934. The plaintiff is not required to show discriminatory intent. *See id.* Generally, plaintiffs establish such an effect by using statistical evidence to compare those affected by the policy with those unaffected by the policy. *See Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 575–76 (2d Cir.2003).

■ Once the plaintiff has established a prima facie case, the burden of proof shifts to the defendant to prove that its actions furthered "a legitimate, bona fide . . . interest and that no alternative would serve that interest with less discriminatory effect." *Huntington Branch*, 844 F.2d at 936. The court generally views "subjective rationales" skeptically; however, if the defendant presents objective evidence to support his assertions, the court is less

wary of subjective explanations. *See Soules v. HUD*, 967 F.2d 817, 822 (2d Cir.1992). After the defendant presents a legitimate justification, the court must weigh the defendant's justification against the degree of adverse effect shown by the plaintiff. *See Huntington Branch*, 844 F.2d at 937.

#### 1. The Gashis' Prima Facie Case

■ To demonstrate a causal connection between a facially neutral policy and the alleged discriminatory effect, plaintiffs must identify members of a protected group who are affected by the policy, as well as similarly situated persons who are not affected by the policy. *See Tsombanidis*, 352 F.3d at 576–77. To properly compare the impact of the policy on the two groups, a court should rely on proportional statistics rather than whole numbers. *See Huntington Branch*, 844 F.2d at 938 (finding a disparate impact where a policy impacted 28% of minorities but only 11% of whites, despite the fact that the majority of the total people impacted were white). The Second Circuit has approved statistical evidence based on city-wide statistics in past cases. *See e.g., Tsombanidis*, 352 F.3d at 577 (noting that plaintiffs could have met their burden by comparing "$x\%$ of all of the recoverings in West Haven" with "$y\%$ of all of the non-recoverings in West Haven").

Here, the Gashis use the United States Census Bureau's Public Use Microdata Sample ("PUMS") to show a causal connection between the occupancy policy and the effect on three person families. According to the estimates of the Gashis' expert, Dr. Bradford, there are 14,540 households with children in the city of Stamford. Pls. Mem. Supp. Mot. Summ. J., Ex. K at 8. Of those, 4,473 are estimated to be three person households. *Id.* Accordingly, three person families with

children represent 30.76% of all households with children.[2] *Id.* Additionally, Dr. Bradford estimates there are 31,634 households with no related children in Stamford. *Id.* Of these households, 3,125, or 9.88%, are three person households without children. By demonstrating that 30.76% of households with children are affected by the occupancy policy, while only 9.88% of households without children are affected, the Gashis set forth a prima facie case of disparate impact. *See Tsombanidis,* 352 F.3d at 577; *Huntington Branch,* 844 F.2d at 938.

In response, defendants contend, without citing any legal support for their contention, that the correct analysis would be to compare the actual number of three person households affected with the number of three person households not affected. *See* Defs. Mem. Opp. Summ. J. at 6–7. Defendants seek to make this comparison because the number of three person households without children in Stamford is 3,125, while the number of three person households with children is 4,473, suggesting there is no disparate impact on three person households with children. *Id.* at 7. However, this analysis contradicts Second Circuit law. *See Huntington Branch,* 844 F.2d at 938 ("[R]elying on absolute numbers rather than on proportional statistics ... significantly underestimat[es] the disproportionate impact of the Town's policy."). Accordingly, the court does not give it merit.

Additionally, defendants argue, again without citing any legal support, that Dr. Bradford erred in considering the statistics from the entire city of Stamford rather than just the census tract where Prospect Grove is located. *See* Defs. Mem. Opp. Summ. J. at 7. Again, this argument contradicts Second Circuit cases that clearly approve of the use of city-wide data in determining whether a facially neutral policy has a disparate impact on a particular group. *See e.g., Tsombanidis,* F.3d at 577 (noting that plaintiffs could have met their burden by drawing statistical evidence from the city of West Haven); *Huntington Branch,* 844 F.2d at 937–38 (relying on statistical evidence from the city of Huntington).

Because the defendants have failed to come forward with evidence that would contradict the Gashis' statistical evidence, and thus have failed to create any material issue of fact, the Gashis have established a prima facie case.

2. The Defendants' Justifications

 Following a plaintiff's establishment of a prima facie case, the burden of proof shifts to the defendant to rebut the prima facie case by showing that the policy furthered a legitimate interest and that "no alternative would serve that interest with less discriminatory effect." *See Huntington Branch,* 844 F.2d at 936. At this stage of the litigation, the court must resolve all ambiguities in favor of the defendants. *See Loeffler,* 582 F.3d at 274. The defendants, however, must do more than vaguely assert "the existence of some unspecified disputed material facts" or present "mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (internal quotation marks and citations omitted).

a. The Stamford Fire Code

The defendants first proffered justification is that "the occupancy policy is found

---

**2.** Dr. Bradford's Report reaches this figure by dividing the estimated number of three person families (4,473) by the estimated number of families with children (14,540). In one isolated instance, a clear typographical error states that this results in a percentage of 35.76%. *See* Pls. Mem. Supp. Mot. Summ. J., Ex. K at 8. In all other instances, Dr. Bradford and the Gashis use the correct result of 30.76%.

in the Stamford Fire Code." Defs. Mem. Opp. Summ. J. at 9. Rather than providing the Stamford Fire Code, however, the defendants then cite to the NFPA Life Safety Code, asserting, without support, that the Stamford Fire Code "draws from" the NFPA Life Safety Code. *Id.* As defendants fail to support their assertion that the NFPA Life Safety Code is binding in Stamford or on Prospect Grove, defendants fail to put sufficient evidence in the record to raise a material issue of fact.[3]

### b. Infrastructure Concerns

As a second justification, defendants assert that "building infrastructure concerns" require the Prospect Grove occupancy policy. *Id.* at 9. Defendants admit, however, that they "do not have any documentation that the building requires an occupancy policy because of structural limitations or system limitations." L.R. 56(a)(2) Stmt. ¶ 16. Absent any such documentation, defendants cannot show that structural limitations are a legitimate concern, and accordingly, fail to raise a material issue of fact to support the assertion that the occupancy policy furthers a legitimate interest in addressing structural concerns.

### c. HUD Guidance

Defendants also assert that the occupancy policy is "presumptively reasonable" pursuant to standards set forth in a memorandum promulgated by the United States Department of Housing and Urban Development ("HUD"). *See* Defs. Mem. Opp. Summ. J. at 10. This guidance, however, later states that the Department will not

determine compliance with the FHA "based solely on the number of people permitted in each bedroom." Occupancy Standards Notice of Statement of Policy, 63 Fed.Reg. 70256–01, 70257 (Dec. 18, 1998). Rather, "owners and managers may develop ... reasonable occupancy requirements based on factors such as the number and size of sleeping areas or bedrooms and the overall size of the dwelling unit." *Id.* Finally, HUD directs that any "nongovernmental restriction" on occupancy should be carefully examined "to determine whether it operates unreasonably to limit or exclude families with children." *Id.*

The Prospect Grove occupancy policy states that only one family may occupy each unit and that the family may not be "larger than the total of two times the number of bedrooms contained in said [u]nit." Defs. Mem. Opp. Summ. J., Ex. K at 7. Defendants do not assert that the occupancy policy is based on the size of the bedrooms or on the size of the apartment overall. Consequently, defendants have failed to raise a material issue of fact upon which to classify the Prospect Grove occupancy policy as reasonable under the factors specified in the HUD memo.

### d. No Less Discriminatory Alternative

Finally, the defendants fail to address at all whether any alternative policy could further their interests in a less discriminatory way. To rebut a prima facie case, the defendant must prove "that its actions furthered ... a legitimate ... interest *and* that no alternative would serve that inter-

---

3. Defendants assert that the occupancy policy is required in order to comply with the Stamford Fire Code, which requires at least 200 square feet per person in residential spaces, or at least 600 square feet for three people. *See* Defs. Mem. Opp. Summ. J. at 9. The occupancy policy, however, would not prohibit two people from occupying a studio apartment, despite the fact that several studio apartments at Prospect Grove are smaller than 400 square feet. *See id.,* Ex. L. Furthermore, several one bedroom apartments at the Prospect Street building of the Prospect Grove complex are larger than 600 square feet, yet the occupancy policy would prevent three people from residing in those apartments as well. *See id.*

est with less discriminatory effect." *Huntington Branch*, 844 F.2d at 936 (emphasis added). Defendants have introduced no evidence into the record that their interest could not be served in a less discriminatory manner. Consequently, they have failed to raise a material issue of fact on the issue of whether an alternative policy could serve their interests with a less discriminatory effect.

Defendants have failed to raise a material issue of fact that either challenges the Gashis' prima facie case or rebuts their prima facie case by demonstrating a legitimate interest in enforcing the Prospect Grove occupancy policy. Additionally, defendants have failed to raise any evidence that no alternative policy would serve their interest in a less discriminatory fashion. As a result, the court grants summary judgment in favor of the Gashis on the issue of whether the Prospect Grove occupancy policy has a disparate impact on families with children in violation of the FHA.

### B. *Discriminatory Statement* [4]

■ The FHA prohibits the making of any statement "with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on ... familial status ... or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). A statement is prohibited if it suggests to an ordinary reader or an ordinary listener that a particular protected group is favored or disfavored. *See Ragin v. N.Y. Times*, 923 F.2d 995, 999 (2d Cir. 1991). A statement that is not facially discriminatory may nonetheless constitute a violation if the context suggests an im-

permissible preference. *See Soules v. HUD*, 967 F.2d 817, 824–25 (2d Cir.1992). Although a lack of discriminatory intent does not provide an affirmative defense, a factfinder may examine intent to determine "the manner in which a statement was made and the way an ordinary listener would have interpreted it." *See id.*, 967 F.2d at 825. An examination of intent is particularly helpful where the statement in question is a discrete message of isolated words rather than a pattern of conduct. *See id.*

■ The Gashis allege that the defendants violated 42 U.S.C. § 3604(c) in a letter stating that the Gashis were in violation of the occupancy policy because they had "two adults and a child residing in a one bedroom apartment." Pls. Mem. Supp. Mot. Summ. J. at 12. The defendants assert that, rather than being discriminatory, this statement was a logical explanation of their assertion that the Gashis were in violation of the occupancy policy. *See* Defs. Mem. Opp. Summ. J. at 15. Stating the violation required the defendants to identify the tenants of the apartment. *See id.* Given that this statement was isolated in a single letter and the importance of context in determining whether a statement is considered discriminatory, the defendants have presented evidence that raises a material issue for trial, namely whether an ordinary reader would consider this isolated statement to present an impermissible preference.

## V. CONCLUSION

For the reasons listed above, the court grants plaintiffs' Motion for Partial Summary Judgment (Doc. No. 54) on the issue of whether defendants' occupancy policy

---

4. Defendants assert that the Gashis' claim under 42 U.S.C. § 3604(c) is outside the statute of limitations. Defs. Mem. Opp. Summ. J. at 12. This court has already determined that the Gashis' suit is timely. *See Gashi v. Grubb & Ellis Prop. Mgmt. Servs., Inc.*, No. 3:09–CV–1037, 2010 WL 2977143, at *5–6 (D.Conn. July 21, 2010).

had a disparate impact on families with children in violation of 42 U.S.C. § 3604(b). The court denies plaintiffs' Motion for Partial Summary Judgment on the issue of whether defendants violated 42 U.S.C. § 3604(c).

**SO ORDERED.**