11-2076-cv
Claudia Woodard v. TWC Media Solutions, Inc., et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY THIS COURT'S LOCAL RULE 32.1.1 AND FEDERAL RULE OF APPELLATE PROCEDURE 32.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 5th day of July, two thousand twelve.

Present:     JOSEPH M. McLAUGHLIN,
             SUSAN L. CARNEY,
             CHRISTOPHER F. DRONEY,
                  *Circuit Judges.*

---

ELISE LAWLESS,

         *Plaintiff,*

CLAUDIA WOODARD,

         *Plaintiff-Appellant,*

         -v-                                              11-2076-cv

TWC MEDIA SOLUTIONS, INC., WEATHER CHANNEL,

         *Defendants-Appellees.*

---

Appearing for Appellant:          KENNETH A. GOLDBERG, Goldberg & Fliegel LLP, New York, NY.

Appearing for Appellees:          LAURA SACK (Roy P. Salins, *on the brief*), Vedder Price P.C., New York, NY.

Appeal from the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Claudia Woodard appeals from a decision of the United States District Court for the Southern District of New York (Barbara S. Jones, *Judge*), granting the summary judgment motion of Defendants-Appellees TWC Media Solutions, Inc. ("TWC") and the Weather Channel (collectively "Defendants"), and dismissing Woodard's claims for employment discrimination on the basis of race, gender, and national origin[1], hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code § 8-101 *et seq.* We assume the parties' familiarity with the underlying facts and the arguments raised on appeal, which we reference only as necessary to explain our decision.

"We review a grant of summary judgment *de novo* to determine whether genuine disputes over material fact exist[,] which should properly be submitted to a jury or whether, where no issues of material fact are found, the moving party is entitled to judgment as a matter of law." Nagle v. Marron, 663 F.3d 100, 104–05 (2d Cir. 2011) (internal quotation marks omitted). We draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. Id. at 105.

---

[1] In addition to addressing directly Woodard's claims for race and gender discrimination, the court discussed, and ultimately dismissed as not demonstrative of pretext, comments regarding Woodard's Jamaican national origin.

1.      Discrimination claims

We analyze Woodard's discrimination claims under the three-step, burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–03 (1973).  See Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012).  To survive a motion for summary judgment on these claims, a plaintiff must first establish a *prima facie* case of discrimination.  Lore v. City of Syracuse, 670 F.3d 127, 169 (2d Cir. 2012).  If the defendant then proffers a "legitimate, non-discriminatory reason" for the adverse action, "the plaintiff must . . . come forward with evidence that the . . . proffered . . . reason is a mere pretext for actual discrimination."  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  To establish pretext, "[t]he plaintiff must produce not simply 'some' evidence, but sufficient evidence to support a rational finding that the . . . reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."  Id. (internal quotation marks and alterations omitted).

Assuming without deciding that Woodard established a *prima facie* case of discrimination, we hold that she has not produced sufficient evidence to support a rational finding that Defendants' proffered reasons for firing Woodard were, more likely than not, pretextual, and that discrimination was likely the real reason for her termination.  See id.  The record is replete with evidentiary support for Defendants' position that TWC terminated Woodard because of her poor job performance and her lack of judgment in interactions with clients.  In the months

3

leading up to Woodard's termination, several TWC clients and employees complained to TWC management about the quality of her work, with some clients expressly requesting that TWC assign them a different account manager. In April 2005, TWC issued Woodard a memorandum enumerating the company's concerns with her performance, and identifying areas requiring improvement. The memorandum also informed Woodard that, effective immediately, she would no longer "call on" three particular clients, and warned that failure to improve her performance could lead to termination. After receiving this memorandum, Woodard contacted Jim Quinn, a buyer for one of those clients, and informed him that she would no longer be working on the account because Quinn's superiors "wanted another rep." Quinn reported to Woodard's supervisor that the call "embarrassed" him and "put him in an uncomfortable situation." He asked that Woodard not call him again. TWC fired Woodard shortly thereafter.

Woodard argues that a jury could find that the reasons given for her discharge were pretextual in light of evidence that, over the course of her employment, certain of Woodard's superiors had made racially insensitive remarks to her, and evidence that she received less favorable work assignments than her peers. These arguments do not withstand scrutiny. The alleged remarks of Woodard's superiors are not evidence of discriminatory discharge as each remark was uttered either by a person with no connection to the termination decision, or in a context temporally remote from and unrelated to the decision. See Tomassi v. Insignia Fin. Grp., Inc., 478 F.3d 111, 115 (2d Cir. 2007). Woodard's disparate

4

treatment argument likewise fails because she has not identified a person with a similar level of relevant experience who received more desirable work assignments. See, e.g., Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001) ("When plaintiffs seek to draw inferences of discrimination by showing that they were 'similarly situated in all material respects' to the individuals to whom they compare themselves, their circumstances need not be identical, but there should be a reasonably close resemblance of facts and circumstances." (internal citation omitted)).

2.     Retaliation claims

As in the discrimination context, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to articulate a legitimate reason for the adverse action. Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011). If the defendant satisfies this burden, the plaintiff must "come forward with evidence establishing that it is more likely than not [that] the employer's decision was motivated, at least in part, by an intent to retaliate against him." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 932–33 (2d Cir. 2010).

As previously discussed, Defendants have articulated a legitimate reason for terminating Woodard. The only evidence Woodard cites in support of her claim that this reason was pretextual and that her firing was retaliatory, is the temporal proximity of her discrimination complaints to the termination decision. This evidence is insufficient, as a matter of law, to satisfy Woodard's burden at this stage of the litigation. See id. at 933 ("The temporal proximity of events may give rise to

5

an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext."). We note, moreover, that Woodard's most serious performance-related conduct, including her ill-advised comments to a TWC client, occurred during the several months between her last complaint and her termination. The time elapsed after her complaint and the external sources of TWC's dissatisfaction with her performance during that time (that is, TWC clients' complaints) severely undermine the strength of any inference that TWC fired Woodard for retaliatory reasons.

Woodard also argues that summary judgment is inappropriate because: (1) an internal email sent by a TWC manager could be read to suggest that the termination decision may have been made approximately three weeks prior to Woodard's actual discharge; and (2) the record contains conflicting evidence regarding a particular manager's role in the termination decision. These arguments are unavailing. The March 28, 2005 email cited by Woodard, in which one manager relays the opinion of another that Woodard should be let go, is in no way inconsistent with the abundant record evidence demonstrating that TWC made the final decision to fire Woodard in mid-April, after her ill-advised call to Quinn, and does not raise a triable issue of fact. See United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009) ("A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."). And any ambiguity about

6

the precise role of one TWC manager in the discharge decision does not preclude summary judgment, because this issue does not bear on the material question: whether TWC's reasons for that decision were pretext for unlawful discrimination or retaliation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

3.      Pay discrimination claims

To establish a *prima facie* case of pay discrimination, a plaintiff must show that: (1) she was a member of a protected class; (2) she was qualified for the job in question; (3) she was paid less than members outside of the protected class for the same work; and (4) the employer's decision to pay the plaintiff less occurred under circumstances that give rise to an inference of discrimination. Belfi v. Prendergast, 191 F.3d 129, 139–40 (2d Cir. 1999). A plaintiff makes out a *prima facie* case when she produces evidence to show that a similarly situated employee outside of the relevant protected group received better treatment. McGuinness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001).

Woodard argues that her 2005 compensation package was inferior to that of a white male TWC employee—Craig Meadow—who, like Woodard, had become an account manager in August 2004.[2] Even if we assume, however, that Meadow is

---

[2] Although Woodard alludes to other white male employees who she claims received compensation packages superior to her own, she fails to explain how these employees and she were similarly situated other than to assert that all account managers had the same job duty—to generate revenue. This lone similarity is insufficient to deem these employees similarly situated, and these references do not, therefore, bear on our determination.

7

similarly situated to Woodard for these purposes, the record demonstrates that Meadow's 2005 base salary, commission, bonus opportunity, and total compensation were, in each instance, less generous than Woodard's. Woodard has therefore failed to make out a *prima facie* case of pay discrimination.

4.      Hostile work environment claims

To establish a hostile work environment claim, "a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 102 (2d Cir. 2010) (internal quotation marks omitted). In analyzing a hostile work environment claim, "we are required to look to the record as a whole and assess the totality of the circumstances, considering a variety of factors including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)) (internal citation omitted). Having conducted an independent review of the record, we agree with the district court that, as a matter of law, the occasional behavior cited by Woodard does not rise to the level of severity or pervasiveness necessary to establish a hostile work environment claim. In addition, the disciplinary actions taken by TWC in response to Woodard's complaints—which include the dismissal of an employee— reflect a vigilant employer, not one that tolerated an unlawfully pervasive hostile environment.

8

We have considered Woodard's remaining arguments, including her arguments under the NYSHRL and the NYCHRL, and, even under the broad and liberal construction of the NYCHRL, see Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62, 66 (N.Y. App. Div. 2009), we find them to be without merit. Accordingly, the judgment of the district court is hereby AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk